IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 1:21-CR-00633 |
| v. ) | |
| ) | The Honorable Royce C. Lamberth |
| Kelly O'Brien ) | |
|     Defendant ) | Sentencing Date: April 8, 2022 |
| ) | |

## DEFENDANT'S POSITION ON SENTENCING

In accordance with this Court's policy regarding guideline sentencing and §6A1.2 of the United States Sentencing Guidelines and Policy Statements, Counsel for the Defendant hereby represents that he and his client have reviewed the Probation Officer's report and that we object to the Probation Officer's calculation of sentencing factors.

We agree with the Government and the Probation Officer that the correct Offense Level Total is 6. However, pursuant to the terms of our Plea Agreement and the sentencing documents available from the Court of Common Pleas in Easton, Pennsylvania, we object to the Probation Officer's calculation of the Criminal History Score and thus the correct Criminal History Category; where the Probation Officer has assessed 4 criminal history points we believe that this in an error. The correct Criminal History Score is 2, resulting in a Criminal History Category of II and a Guideline Range of 1 – 7 months.

Given the Defendant's limited criminal history and the decade of law-abiding life between her last offense and the conduct at issue here we also believe that the Criminal History Category overstates the seriousness of her actual criminal history and we ask the Court to grant her a departure.

Furthermore, we respectfully ask the Court to weigh the sentencing factors delineated in 18 U.S.C. §3553(a) rather than following the Guidelines in this case. We agree with the Government that the Guideline Range is not an appropriate measure of the Defendant's culpability in this case and that the Court cannot presume that range is reasonable. Under recent decisions of the United States Supreme Court, *see, e.g., Gall v. United States, 552 U.S. 38 (2007); Kimbrough v. United States, 552 U.S. 85 (2007); Nelson v. United States, 555 U.S. 350 (2009)* and the United States Court of Appeals for the Fourth Circuit, *see*, *e.g., United States v. Pauley, 511 F.3d 468 (4th Cir. 2007)*; this Court has the authority to impose a sentence it feels is sufficient, but not greater than necessary to meet the aims of sentencing without regard to what is suggested by the Sentencing Guidelines. We believe that the facts demand it.

**The Criminal History Score**

In Paragraphs 41, 42 and 43, the Probation Officer notes that the Defendant has two previous convictions for Driving Under the Influence of Alcohol (DUI) in Easton, Pennsylvania. Citing the sentences imposed consecutively for each charge – not less than three days nor more than 6 months on the first charge, not less than two days nor more than six months on the second, the Probation Officer assessed two Criminal History Points for each charge pursuant to §4A1.1(b).

In Paragraph 86, noting that his Criminal History point calculation is different from what was in the Plea Agreement, the Probation Officer states that with four total Criminal History points Ms. O'Brien has a Criminal History Category of III and a Guideline Range of two to eight months.

We object to this calculation, believing it to be incorrect and unfair.

First, we believe that the Probation Officer's calculation is simply incorrect. The court records from the Court of Common Pleas in Easton, Pennsylvania reflect that Ms. O'Brien was sentenced on both counts at a single sentencing event. On the first charge, she was sentenced to a term of three days to six months. On the second charge, she was sentenced to a term of two days to six months, to be served consecutively to the first charge. In reality, she served five days in jail – three days on the first count, and two on the second. A letter from the Northampton County Department of Corrections explaining how that sentence was imposed is attached as an Exhibit.

As the Commission notes in §4A1.2(b)(2), "'sentence of imprisonment'" refers only to the portion that was not suspended." In Mrs. O'Brien's case, the portion of the sentence that was not suspended was three days on the first charge and two days on the second.  Each of these convictions should be assessed a single Criminal History Point pursuant §4A1.1(b), resulting in a Criminal History Category of II and a Guideline Range of one to seven months.

Second, regardless of whether the Court agrees with the parties or the Probation Officer about the proper calculation of the Criminal History Score, we believe that the Court should depart from the Guidelines because the calculation unfairly overstates the seriousness of Mrs. O'Brien's criminal history. As the Commission notes in the Background section of §4A1.1, "there are jurisdictional variations in offense definitions, sentencing structures, and manner of sentence pronouncement…in recognition of this imperfection of this measure however, §4A1.3 authorizes the court to depart from the otherwise applicable criminal history category in certain circumstances."

We believe, respectfully, that the Court should find that those circumstances exist

3

here. The legal standard for whether a downward departure is appropriate is clearly stated in §4A1.3(b)(1) –

> if reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

In Ms. O'Brien's case, there is reliable information indicating that her criminal history category both substantially over-represents the seriousness of her criminal history and the likelihood that she will commit other crimes.

Prior to the instant case, Ms. O'Brien has been before only one judge on one occasion in her entire life. Both of her prior DUI charges happened in the course of about six weeks in 2011, the second one occurring before she was tried for the first, and the agreed disposition was five days in jail. This is exactly the kind of variation in sentencing structure and manner of sentence pronouncement the Commission was talking about above. Had the judge written the sentence down in a different way there would be no doubt about how much time was imposed. The ambiguity of that court's language should not be held against Ms. O'Brien.

The calculation method itself is also suspect. Using the Probation Officer's four-point calculation, the Sentencing Commission calculates Ms. O'Brien's criminal record to be roughly equivalent to someone who served two one-year sentences, or even a multi-year felony sentence. Even the two-point calculation we suggest overstates her record, giving her the same criminal history score as someone who served a year in prison. This is exactly the kind of failure to help district court judges to fairly differentiate defendants based on their conduct that the Supreme Court wrote about in *Kimbrough v. United States, supra,* and we ask that the Court sustain our objection.

Furthermore, the Sentencing Commission itself suggests that Ms. O'Brien is exactly the kind of defendant who deserves a downward departure pursuant to §4A1.3(b)(1) – in its own Application Notes to this chapter, the Commission gives an example of the kind of defendant who deserves a downward departure because their criminal history category overstates the seriousness of their criminal history:

> A downward departure from the defendant's criminal history category may be warranted if, for example, the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period.

That describes Ms. O'Brien perfectly. Her criminal history category is based on two DUI convictions imposed on the same day a decade ago. In the ten years since, she has complied with probation in Pennsylvania and completed all of the terms of post-release supervision there. Her Pre-Sentence Report does not even include a traffic ticket. In the 15 months that have passed since January 6, 2021 she has also lived a law-abiding life that includes perfect compliance with all pre-trial release conditions set by this Court.

We respectfully ask that the Court sustain our objection, find that Ms. O'Brien's criminal history category substantially over-represents the seriousness of her record and the likelihood that she will commit other crimes, and grant a downward departure.

**Mrs. O'Brien's Conduct and the Sentencing Factors**

The riot in and around the Capitol on January 6, 2021 is a stain on our history as a nation of laws and not men. Tens of thousands of people, including Mrs. O'Brien, came to Washington believing that the 2020 Presidential election was so rife with errors and fraud that it was their patriotic duty to support President Trump's efforts to reexamine the results and possibly overturn the vote of the Electoral College. All of that – coming to

5

Washington, marching down Constitution Avenue, demanding redress for their grievances – is perfectly legal, the very acts expressly protected by the Constitution.

It is what came next that concerns all of us. Thousands of people, including Mrs. O'Brien, marched on to the Capitol grounds despite the fact that the grounds and the buildings themselves were closed to the public. Hundreds of people, including Mrs. O'Brien, then marched *in* to the Capitol building, forcing the Congressmen and Senators inside to interrupt their joint session and retreat to safety.

What those hundreds of people did varies tremendously in severity. At one end of the spectrum are those who merely walked in through doors forced open by others, looked around, communed with other like-minded angry citizens, and left. Many of these people have not been charged, and many of those who were charged have already been sentenced to probation. At the other end of the spectrum are the people who led the crowd, brawled with police officers, destroyed property, invaded the most sensitive areas of the Capitol, carried weapons, and exhorted others to violence. Mrs. O'Brien was somewhere in between because she entered the Speaker's office and spoke approvingly of one man who damaged property before deleting her Facebook posts and withdrawing from social media, but she is far closer to those who walked in, looked around and left than those who engaged in thefts and violence or led others to do so.

The Government notes in their position that Mrs. O'Brien's intention, once she left the area outside the rally on the Ellipse, was to walk towards the Capitol and turn left to get to her hotel. Her intention, essentially, was to use the most prominent building in Washington as a landmark to help her find her way as she walked around a strange city with tens of thousands of others on a cold day.

When she arrived at the Capitol, her curiosity got the best of her. Rather than seeing the discarded barriers at Peace Circle as a sign that the Capitol grounds were closed, she marched forward. Rather than avoid the jostling crowd and the wafting tear gas, she marched forward. And rather than see the crowd streaming into broken windows and doors as a sign that they were all trespassing, she marched forward.

Mrs. O'Brien had never been to the Capitol before, and she had no real idea of where to go. Having come to Washington by herself, she had no friends or acquaintances in the crowd. She walked up the stairs built for the inauguration ceremonies and entered the Senate Wing doors approximately ten minutes after they were breached by others. She followed the crowd as it made its way into the Crypt and up one of the several staircases nearby. It was then that she found herself between the Rotunda and the Speaker of the House's office suite. Again, rather than recognize that all of the people she was with were trespassing and that the Speaker's office is not an open public space like the Rotunda or the Crypt, she believed that she was a patriot standing proudly in a public building that her taxes had paid for. She thought she was in the right, and she bragged about it on social media. So did everyone else around her – seemingly every movement is recorded in cell phone videos that were broadcast to the world on social media networks in real time.

Other defendants have come before this Court and other judges in this district and argued that they "got caught up in the crowd," that somehow they gave in and followed others rather than make their own judgments of what was right or wrong. And while this is true for Mrs. O'Brien, at least to some extent, she takes full responsibility for her actions. She thought she was acting as a patriot, with other patriots. She thought she was

defending the process, not seeking to tear it down. She knows now that she was wrong. Not just because of her arrest and prosecution, but because of the countless reactions she received from friends and relatives online last January.

There is no question that what she did was wrong, but this Court is tasked with answering a different question. The Government's argument, essentially, is that Mrs. O'Brien's actions in the moments and days that followed set her apart from so many defendants who have already been sentenced to probation or relatively short jail sentences. They argue that because she seemed to want to see the sign above the Speaker's office doorway (and possibly the office itself) smashed by others that she deserves more. They argue that because she seemed to support the man who smashed that sign – after he smashed it – that she deserves more. And even though she exited the building immediately thereafter, even asking a police officer for help finding a way out, they argue that because she did not immediately express remorse that she is not remorseful. Furthermore, they argue that her choice to erase her Facebook page and delete her Facebook account was entirely aimed at obstructing justice rather than avoiding the backlash of social media friends who thought her behavior and her views about what happened on January 6 were abhorrent. For all of this, they suggest that a sentence of five months in jail – far more than what even the Guidelines suggest – is appropriate. We disagree.

In assessing the §3553(a) factors, these cases are somewhat odd. Some of the factors simply do not count for much – given the short sentence length available for a misdemeanor there is little for the Bureau of Prisons to provide in terms of educational and vocational training, or medical care. And Mrs. O'Brien doesn't need any. Her non-

violent offense conduct, along with her long history of living without committing crimes and her successful compliance with pre-trial release conditions show that the community's need for protection from her is not great.

We are primarily concerned with the kinds of sentences available and the sentencing range, the need for the sentence imposed, and the need to avoid unwarranted sentencing disparities. We respectfully ask that the Court consider imposing a term of probation with community service and restitution.

### The Kinds of Sentences Available and the Sentencing Range

As we discussed above, we believe that the correct Criminal History Score is 3, putting Mrs. O'Brien in Category II, and we believe that hers is the exact situation envisioned by the Commission when they created the departure for an overstated criminal history in §4A1.3. The suggested Guideline Range for her then is 1-7 months in jail.

The Court has several options here, all of which include probation, community service and restitution. The question, really, is whether the Court wants to impose an additional jail term or a term of home confinement.

### The Need for the Sentence Imposed and Avoiding Unwarranted Disparities

The Government writes at length about the need for a significant jail term in order to reflect the seriousness of the offense, promote respect for the law, provide a just punishment and afford adequate deterrence, both specific and general. They have asked the Court to impose a five-month jail term, believing that Mrs. O'Brien's conduct is so egregious that she deserves more time in jail than all but one of the other defendants sentenced so far for a violation of 18 U.S.C. §1752(a)(1). We believe that this is

excessive, and that it would create an unwarranted sentencing disparity. We are asking the Court to consider imposing only probation, community service, and restitution.

Supervision by a Federal Probation Officer, along with community service and restitution, does a lot to serve the aims of §3553(a). Mrs. O'Brien will be subject to all of the standard terms of probation, along with any special terms the Court sees fit to impose. She will be required to report to a probation officer and obey their orders. She will be limited in how and where she travels. She will be required to do things other citizens are simply not required to do. Two or three years of these constraints on her liberty are enough to reflect the seriousness of the minutes she spent contributing to the lawlessness of January 6, a just punishment that would promote respect for the law and deter her and others from ever doing it again, especially when joined by a significant community service obligation and restitution.

Furthermore, Mrs. O'Brien and her family have already paid a cost for her misdeeds. She has been very publicly charged with a crime, seeing her story featured in local and national news media. She has been excoriated on social media, leading her to delete her accounts after losing scores of long-time friends. And this unwanted fame has made it difficult for her and her husband to earn a living. These extra-judicial sanctions, imposed by others in the community, also serve the Court's needs to promote respect for the law and deter her and others from further lawlessness.

And yet the Government is asking for a five-month jail sentence. While that might deter Mrs. O'Brien and others from future lawlessness, the capricious and arbitrary nature of their recommendation does not promote respect for the law. While Mrs. O'Brien's conduct was certainly serious, what is it that sets her apart from others who have already

been sentenced? Her early entry into the Capitol after the Senate Wing doors were breached? Anna Morgan-Lloyd (1:21-CR-00164-RCL) and Donna Bissey (1:21-CR-00165-TSC) were ahead of her and the Government recommended probation. Her violation of 18 U.S.C. §1752(a)(1) instead of the less-serious 18 U.S.C. §5104(e)(2)(G) charge? Among all the other defendants charged with that crime so far, only one (Gracyn Courtright, 1:21-CR-00072-CRC) has had a higher sentencing recommendation from the Government, and she only received 30 days on the Government's six-month recommendation. Her intrusion into the Speaker's office, and her decision to delete her social media posts? Andrew Ericson (1:21-CR-00506-TNM) also entered the Speaker's office, but where Mrs. O'Brien left within minutes without damaging or stealing anything Mr. Ericson made himself at home, taking a beer from a fridge and putting his feet up on a conference table to enjoy it. He also expressed no regret or remorse before deleting his social media posts days later, and yet the Government only recommended two months in jail, only 20 days of which was imposed.

      The Government is also unable to consistently argue what conduct should set one offender apart from others, even in the cases they ask the Court to consider when judging Mrs. O'Brien. Entering the Capitol with the intent to obstruct Congress, a felony charge applied to many other defendants, got Leonard Ridge (1:21-CR-00406-JEB) a 14-day sentence on a 45-day Government recommendation, one tenth of the amount of time they suggest Mrs. O'Brien should serve. Likewise, Derek Jancart's (1:21-CR-00148-JEB) decision to leave his Facebook posts about the riot up was an attempt to spread false propaganda, where Mrs. O'Brien's decision to delete her posts is allegedly an attempt to obstruct justice. And Jancart, who taunted police while they battled other rioters and used

a bike rack to scale the building, served 45 days on a four-month Government recommendation.

This kind of inconsistency – asking this Court for five months in jail for someone whose conduct is similar to or less serious than that of others who received lower Government recommendations and even lower sentences – erodes respect for the law.

This inconsistency also creates unwarranted sentencing disparities, starting with the defendants in the Government's chart who were allowed to plead guilty to lower charges with agreements that the government would recommend probation. The Government notes that there is no such agreement in this case, but their reasoning for why their choice to make that agreement with some defendants and not with others lacks credulity. In a footnote to their chart, they cite a 9th Circuit case that held that there is no unwarranted disparity when a defendant who pleads earlier in a 'fast track' program gets a shorter sentence. That is simply not what happened in this case – this is not a situation where other defendants came in quickly and plead guilty while Mrs. O'Brien held out, this is a situation where the Government chose to charge some defendants immediately and others months later. There was no fast track to choose. Mrs. O'Brien engaged Counsel immediately following her arrest, and Counsel immediately began the process of reviewing discovery and negotiating a plea. If there were benefits for other defendants who gave up their trial rights and entered pleas quickly, Mrs. O'Brien deserves the same consideration.

Following the Government's recommendation to go above the Guideline Range would also create a disparity with the way this Court has viewed the Guidelines and the Sentencing Commission's recommendations in recent years. According to the Sentencing

Commission, courts in this district grant variances and departures from the Guidelines in more than half of all cases. And when motions pursuant to §5K are counted in, that number rises to nearly 65%, one of the highest rates in the entire country. Only two defendants received sentences above their Guideline Range in this district in 2020. *See* District at Glance – District of Columbia 2020, *See* U.S. SENTENCING COMM'N, SOURCEBOOK 2020, Table N-DC, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2020/stats_DC.pdf, (also included as an exhibit to this document). Granted, the January 6 cases present unprecedented issues to this Court, but imposing a sentence twice as long as the Guidelines suggest, or even five times as long depending on the Court's ruling on our Criminal History Category objection, is an enormous change from the way courts in this district have viewed the Guidelines in the post-*Booker* era.

**Conclusion**

In conclusion, Kelly O'Brien stands before the Court for sentencing on a misdemeanor – she entered and remained within the Capitol, and she did so in the midst of a riot. This is a serious charge that deserves punishment, but we believe the Guidelines and the Government's recommendation are both excessive. The Guidelines overstate her criminal history, both because of an odd means of reporting sentences used in Pennsylvania courts a decade ago and because her entire criminal history consists of two DUI convictions imposed on the same day a decade ago. And the Government's recommendation is excessive because it is more than what they have asked for in other similar cases and far more than what courts in this district have imposed; their recommendation of a five-month jail term for Mrs. O'Brien is made without justifying

13

why they have recommended that she serve more time than any other misdemeanor defendant sentenced so far.

We respectfully ask the Court to consider sentencing Mrs. O'Brien to probation, with a significant community service obligation and restitution. That sentence would put her in line with others who entered the Capitol and bragged about it on social media, but did not lead others, destroy property or exhort them to violence. If the Court believes that more punishment is appropriate, we ask the Court to consider a term of home confinement rather than jail.

          Kelly O'Brien
          By Counsel

          _____/S/_____
          Gregory T. Hunter
          Virginia State Bar Number 45489
          Attorney for the Defendant
          2007 North 15th Street
          Suite 201
          Arlington, Virginia 22201
          (703) 966-7226 telephone
          (703) 527-0810 facsimile
          greghunter@mail.com

EXHIBITS:
Letter from Northampton County Department of Corrections
Bureau of Prisons 2020 sentencing statistics for the District of Columbia

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on the 5th day of April, 2022, an exact copy of the foregoing Position of the Defense with Respect to Sentencing Factors was filed with the Clerk of the Court using the CM/ECF system, causing a Notice of Electronic Filing to be served upon:

Maria Fedor, Esquire
Assistant United States Attorney
Maria.Fedor@usdoj.gov


Copies of this document have been forwarded to the following non-filing users:
By electronic mail:
    Robert Walters
    United States Probation Officer
    Robert_Walters@dcp.uscourts.gov

By personal service:
    Kelly O'Brien
    Defendant

                                                                     /S/
                                          Gregory T. Hunter
                                          Virginia State Bar Number 45489
                                          Attorney for the Defendant
                                          2007 North 15th Street
                                          Suite 201
                                          Arlington, Virginia 22201
                                          (703) 966-7226 telephone
                                          greghunter@mail.com